IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WESTPORT INSURANCE CORPORATION, individually and as assignee of R & H MUFFLER CO., </br></br>Plaintiff, </br></br>v. </br></br>THE TRAVELERS INDEMNITY COMPANY, a Connecticut Corporation; THE PHOENIX INSURANCE COMPANY, a Connecticut corporation; THE TRAVELERS INDEMNITY COMPANY OF AMERICA, a Connecticut corporation; and THE TRAVELERS INDEMNITY COMPANY OF CONNECTICUT, a Connecticut corporation; </br></br>Defendants. | Case No. 16 C 2286 </br></br>Judge Joan H. Lefkow |

**OPINION AND ORDER**

Westport Insurance Corporation, individually and as assignee of R & H Muffler Co., pleads breach of contract (Count I), promissory estoppel (Count II), and reformation (Count III) in its fourth amended complaint against The Travelers Insurance Company and certain affiliates (together, Travelers). Travelers moves for summary judgment on all three counts. (Dkt. 46.) For the reasons below, the motion is denied as to Count I and granted as to Counts II and III.[1]

---

[1] The court has jurisdiction under 28 U.S.C. § 1332. Venue is appropriate under 28 U.S.C. § 1391(b).

# BACKGROUND[2]

R & H Muffler Co. is an automotive repair shop in Crest Hill, Illinois, operating as a Midas franchise. (Defendants' Rule 56.1 Statement of Undisputed Material Facts (SUMF), dkt. 47 ¶ 1; dkt. 46-6 at 6:16–24.) In 2013, R & H's workers' compensation insurer cancelled R & H's policy for non-payment of the $9,424 annual premium. (SUMF ¶¶ 19–21.) Because the Illinois Commerce Commission required R & H to maintain continuous coverage or pay fines, the lapse was a serious problem for R & H. (Westport's Statement of Additional Undisputed Facts (SAUF), dkt. 54 ¶ 8.) R & H's president James Hillman asked an insurance producer, Richard Friedenberg of Klafter Northern Insurance Services, Ltd., to find a new policy. (SUMF ¶¶ 2, 17, 20.)

Friedenberg inquired about a policy from Travelers,[3] an insurance company with which Friedenberg and Klafter had had a longstanding relationship. (*See* dkt. 46-3 at 14–15.) Travelers uses a computer system called I-enet to assist in negotiating insurance policies. (SUMF ¶ 13.) The I-enet system has two interfaces. On one end, producers like Friedenberg input information about the insurance they seek, which generates a draft proposal for an insurance policy at a quoted premium. (*Id.*) After the draft proposal is generated, one of two things will happen on the producer's end. For proposals covering small risks, I-enet will indicate that the producer himself

---

[2] Unless otherwise noted, the facts set out below are taken from the parties' Local Rule 56.1 statements and are construed in the light most favorable to the non-moving party. The court will address many but not all the factual allegations in the parties' submissions, as the court is "not bound to discuss in detail every single factual allegation put forth at the summary judgment stage." *Omnicare, Inc.* v. *UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011). Following its regular practice, the court has considered the parties' objections to the statements of facts and includes in its opinion only those portions of the statements and responses that are appropriately supported and relevant to the resolution of this motion. Any facts that are not controverted as required by Local Rule 56.1 are deemed admitted.

[3] The parties both collectively refer to all four defendants as Travelers and do not distinguish among them. The court follows suit.

has authority to issue the policy and bind Travelers. (*Id.* ¶¶ 14, 16.) For larger risks, I-enet will tell the producer that the proposal is not within his authority and direct him to refer the proposal to a Travelers underwriter. (*Id.*)

A final step on the producer's side of the I-enet system is disputed here: Friedenberg testified at his deposition that I-enet allows him to mark proposals "for issue," meaning that the policy would immediately issue once the underwriter approved the proposal. (*See, e.g.*, dkt. 46-3 at 26:5–19, 27:9–13, 34:7–35:6, 83:7–12, 84:3–11.) Travelers underwriter Melissa Bloor denied that such a "button" exists and insisted that a policy would never issue until a producer explicitly placed an order to bind coverage. (*See, e.g.*, dkt. 46-4 at 110:3–13.)

If the draft proposal is referred, the underwriter reviews the proposal and relevant rating information on her side of I-enet and decides whether to approve the proposal. If she approves, she may click a button within I-enet to "approve" the referred proposal. (SAUF ¶ 1.) If the underwriter approves this way, the producer is then given authority in I-enet to issue the policy himself. (*Id.* ¶ 3.) But the underwriter can also verbally communicate her approval of the proposal to the producer, without approving the proposal in I-enet. (*Id.* ¶ 2.) This route is more common among Travelers underwriters. (*Id.* ¶ 4.) Bloor testified at her deposition that after she communicates approval, she does not consider Travelers to be bound to issue a policy. Instead, the producer may choose whether to accept the approved proposal by placing an order to bind coverage, or simply walk away without ever binding coverage. (*E.g.*, dkt. 46-4 at 110:3–13.)

Finally, Travelers underwriters use a separate system called Dashboard to keep track of proposals that had been approved but not issued. (SAUF ¶ 16.) The Dashboard system sends the underwriter a reminder to follow up with the producer about those proposals. (*Id.* ¶ 17.)

3

On October 9, 2013, Friedenberg submitted R & H's request for workers' compensation coverage and supporting rating information into the I-enet system. (SUMF ¶ 10.) He asked for a policy with an immediate effective date, which was uncommon for such policies but reflected R & H's pressing need for coverage. (SAUF ¶¶ 8, 15.) Friedenberg's submission generated a draft proposal for the insurance at an annual premium of $19,488. (SUMF ¶¶ 10, 21.) I-enet told Friedenberg that he did not have authority to issue the policy himself and had to refer it to an underwriter. (*Id.* ¶ 15.) Friedenberg did so, e-mailing Travelers underwriter Melissa Bloor, "I have attached the NCCI Experience Rating Sheet and three year loss runs. The workers comp is entered for issue in I-enet. Thanks for your help." (*Id.* ¶ 6.)

After about twenty minutes, Bloor responded, "Thanks Rick! I've reviewed the account, and unfortunately, I'm unable to improve on the pricing. The proposal is attached. Please note I have amended the Named Insured to match what I located on the Secretary of State's website." (*Id.* ¶ 8.) Bloor attached a six-page proposal that was identical to the draft proposal generated on Friedenberg's end of I-enet except that it corrected a scrivener's error in R & H's legal name. (SAUF ¶ 6.) Bloor said in her deposition that she would not have told Friedenberg that she was "unable to improve on the pricing" unless Friedenberg had at some point asked her to try. (Dkt. 46-4 at 118:21–22.) Friedenberg denies that he asked, and the record contains evidence that Bloor sometimes reduced premiums without being asked.

Friedenberg replied, "Ok thanks," marking the end of the exchange. (SUMF ¶ 12.) That day, Friedenberg told R & H that he had secured coverage with Travelers. (Dkt. 46-6 at 18:21–19:2.) But no policy was issued, nor was R & H ever billed for a premium. (SUMF ¶ 23.)

R & H incurred a workers' compensation loss on November 15, 2013, when an R & H employee was injured on the job. (*Id.* ¶ 31.) Thinking it had an insurance policy with Travelers,

4

R & H tendered the claim to Travelers, which denied it because there was no policy. (*Id.* ¶ 4.) A Klafter employee reached out to Bloor and insisted that Friedenberg had bound the workers' compensation policy in October 2013. (*Id.* ¶ 26.)[4] Bloor responded that Friedenberg had not bound coverage, but she could provide coverage retroactive to October 9, 2013 per the earlier proposal if Klafter submitted a "no known loss" letter affirming that R & H had not incurred any workers' compensation losses between October 9 and November 18, which Klafter of course could not submit. (*Id.* ¶¶ 27–31.) Weeks later, Travelers issued an insurance policy effective December 13, 2013 after a Klafter employee referred a draft proposal to Bloor, Bloor responded with an approved proposal, and the Klafter employee replied, "Please issue 12/13/13" with billing instructions. (*Id.* ¶¶ 32–36.)

Eventually, Westport, Klafter's errors & omissions insurance carrier, agreed to defend R & H against the workers' compensation claim. (*Id.* ¶ 2.) Westport settled that claim for a confidential amount exceeding the jurisdictional minimum for diversity, in exchange for an assignment from R & H of any claims against Travelers. (*Id.* ¶ 5.) This suit followed.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986). To determine whether any genuine fact issue exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56(c). In doing so, the court

---

[4] The employee said Friedenberg bound the policy on October 21, 2013, for which there is no evidence.

5

must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott* v. *Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769 (2007).

The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). In response, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact which requires trial." *Day* v. *N. Ind. Pub. Serv. Co.*, 987 F. Supp. 1105, 1109 (N.D. Ind. 1997); *see also Insolia* v. *Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). If a claim or defense is factually unsupported, it should be disposed of on summary judgment. *Celotex*, 477 U.S. at 323–24.

## ANALYSIS

**I.  Breach of Contract**

There is no dispute that Travelers did not issue a workers' compensation policy to R & H that covered the November 2013 workers' compensation loss. Westport instead alleges that at some point during the October 9, 2013 exchange between Friedenberg and Bloor, a contract was formed that required Travelers to issue the policy.

To prove breach of contract under Illinois law, which controls here, Westport must prove, among other things, "the existence of a valid and enforceable contract . . . ." *nClosures Inc.* v. *Block & Co.*, 770 F.3d 598, 607 (7th Cir. 2014) (citation omitted).[5] "To be valid under Illinois law, a contract . . . requires an offer, acceptance, and consideration," the last of which is not disputed here. *Franck* v. *Farmers New World Life Ins. Co.*, 445 F. Supp. 2d 954, 961 (N.D. Ill. 2006) (citing *Voelker* v. *Porsche Cars N. Am.*, 353 F.3d 516, 528 (7th Cir. 2003)). "In addition,

---

[5] The remaining elements of substantial performance, breach, and damages are not addressed in the motion.

there must be mutual assent, or a 'meeting of the minds,' as to the essential terms of the contract." *Id.* (citing *Acad. Chi. Publishers* v. *Cheever*, 578 N.E.2d 981, 984 (Ill. 1991)). To find a meeting of the minds, the court "look[s] not to the parties' subjective intent but rather to objective evidence of their intent." *Cohen Dev. Co.* v. *JMJ Props., Inc.*, 317 F.3d 729, 736 (7th Cir. 2003).

Travelers and Westport diverge in their interpretation of Friedenberg and Bloor's exchange, colored by their factual dispute over how the I-enet system works. Although Bloor was the offeror and Friedenberg the offeree no matter who is right about the I-enet system, the dispute creates a genuine issue of material fact over whether Friedenberg accepted Bloor's offer.

Travelers asserts that, for high-risk policies like this one, I-enet follows this sequence: (1) the producer inputs information and receives a draft proposal; (2) the producer refers the draft proposal to an underwriter; (3) the underwriter responds with an authorized proposal, which may be the same as the draft proposal;[6] (4) the producer must then agree to the authorized proposal by ordering Travelers to bind coverage. Under this interpretation, when a producer refers a proposal to an underwriter, he requests an offer but does not make an offer himself. The Travelers underwriter makes the offer by responding to the referral with an authorized proposal. The producer must then accept the authorized proposal to form a contract. In this case, that means Bloor's email to Friedenberg was the offer, and Friedenberg had to accept it to form a contract.

Under Westport's view of the I-enet system, somewhere between the first and second steps above, a producer may transform a referral from a request for an offer into an offer by first designating the proposal as "for issue." Marking a draft proposal "for issue" tells the underwriter

---

[6] The parties make much of the different ways an underwriter can communicate her authorized proposal, but the fundamental contract-law overlay is the same. Travelers thinks that the response to any referral, however sent, is an offer; Westport thinks that a response to a "for issue" referral, however sent, is either an acceptance or a rejection.

that the producer is ready to be bound by the referred draft proposal, thus making the underwriter believe that she can bind the producer simply by authorizing the referred proposal as-is. (*E.g.*, dkt. 46-3 at 26:5–19, 27:9–13, 34:7–11, 83:7–12, 84:3–11.) On this view of the I-enet system, Friedenberg's referral was an offer. *Wigod* v. *Wells Fargo Bank, N.A.*, 673 F.3d 547, 561 (7th Cir. 2012) ("In Illinois, the test for an offer is whether it induces a reasonable belief in the recipient that he can, by accepting, bind the sender.").

But even if Friedenberg's referral was an offer, Bloor's response was not an acceptance. In Illinois, "in order to constitute a contract by offer and acceptance, the acceptance must conform exactly to the offer." *Finnin* v. *Bob Lindsay, Inc.*, 852 N.E.2d 446, 448 (Ill. App. Ct. 2006) (citing *Whitelaw* v. *Brady*, 121 N.E.2d 785 (Ill. 1954)). It is undisputed that Bloor's proposal did not exactly match Friedenberg's referral. (Dkt. 54 ¶ 6.) Thus, under Illinois law, if Friedenberg's referral was an offer, Bloor's response was a "counteroffer that must be accepted by the original offeror before a valid contract is formed." *Id.* at 448–49. Westport responds that the change—correcting a scrivener's error in R & H's name—was so minor that it does not count. But "Illinois case law clearly mandates that *any* modification, however slight, prevents the creation of a valid contract." *Id.* at 449 (finding no contract formed even though response to offer "made only non-substantive, typographical modifications to the proposed agreement"); *see also Venture Assocs.* v. *Zenith Data Sys. Corp.*, 987 F.2d 429, 432 (7th Cir. 1992) (holding "minor, non-substantive changes" in response to offer prevented contract formation under Illinois law).

Thus, under both parties' versions of the facts, Friedenberg had to accept Bloor's offer to form a contract. Though Friedenberg's response to Bloor's offer, "Ok thanks," was undoubtedly not best practices, a jury viewing the evidence in the light most favorable to Westport could find that it was acceptance. "Acceptance . . . requires an outward manifestation of assent to be bound

8

by words and acts." *Mohamed* v. *Uber Techs., Inc.*, 237 F. Supp. 3d 719, 729 (N.D. Ill. 2017). An acceptance must be unequivocal. *Rogers Cartage Co.* v. *Bendix Transp. Mgmt. Corp.*, No. 88 C 10899, 1990 WL 250421, at *2 (N.D. Ill. Dec. 17, 1990) (citing *Vincent DiVito, Inc.* v. *Vollmar Clay Prods. Co.*, 534 N.E.2d 575 (Ill. App. Ct. 1989)). Friedenberg testified in his deposition that he had already marked the proposal "for issue," indicating his assent to the material terms of the contract. If a jury credits that testimony, it could also find that that "Ok thanks" was an unequivocal manifestation of his assent to be bound, considering that he already told Bloor that he agreed to the material terms of the proposal she sent.

Travelers offers three responses that may persuade a jury but are not reasons to grant summary judgment. First, it argues that there is no written proof of Friedenberg's ever using the phrase "for issue" before October 9, 2013, discrediting his claim that there was a "for issue" button in I-enet, or that Bloor would have understood "for issue" the same way Friedenberg did. But that speaks to Friedenberg's credibility, which the court does not evaluate on summary judgment. *See Payne* v. *Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) ("On summary judgment a court may not make credibility determinations . . . .") (citations omitted). Friedenberg's deposition testimony is evidence in the record that such a button or custom exists, and that Bloor would have understood it that way. Second, Travelers emphasizes the importance of unequivocal acceptance, but "Ok thanks" is not equivocal simply because there are multiple possible reasons why Friedenberg responded that way to Bloor. In the context of their complete exchange, a jury viewing the evidence in the light most favorable to Westport could find that "Ok thanks" approved Bloor's offer, rather than thanked her for considering the matter. There are, obviously, better ways to express acceptance, (*see, e.g.*, dkt. 46-14 (Klafter's unquestionably clearer acceptance of Travelers's December 2013 proposal)), but best practices are not required. *See,*

9

*e.g.*, *Rosenthal* v. *Battery Partners VI, L.L.C.*, No. 01 C 8528, 2007 WL 2028169, at *8 (N.D. Ill. July 10, 2007) (court must overcome "mild surprise" that "parties . . . proceed[ed] so casually" and apply neutral contract principles).

Third, Travelers argues that the objective evidence shows that there was no meeting of the minds. The objective evidence is almost all disputed, which supports denying summary judgment. Both parties treat Friedenberg and Bloor's failure to follow up with one another as the dog that did not bark. Travelers argues that Friedenberg would have checked in with Bloor when no policy was ever issued if he thought they *had* made a deal; Westport argues that Bloor would have followed up with Friedenberg to see why he hadn't ordered her to bind coverage if she thought they *hadn't* made a deal. Each party plausibly responds to the other's argument. Travelers also argues that R & H asked Friedenberg to keep shopping for a lower premium after he reported on his exchange with Travelers; Westport argues that "shopping" meant paying for insurance with Travelers and canceling later if Friedenberg found something cheaper. The parties also dispute whether Bloor ever received R & H's Federal Employer Identification (FEIN) number, and whether receiving it was a prerequisite to binding coverage. These are all factual disputes that trial, not summary judgment, must resolve.

The motion is denied as to Count I of the fourth amended complaint.

## II. Promissory Estoppel

In Illinois, promissory estoppel requires proof of "(1) an unambiguous promise; (2) reasonable and justifiable reliance by the party to whom the promise was made; (3) the reliance was expected and foreseeable by the promisor; and (4) the promisee relied upon the promise to her detriment." *Fischer* v. *First Chi. Capital Mkts.*, 195 F.3d 279, 283 (7th Cir. 1999) (citation omitted). "Under Illinois law, a claim for promissory estoppel will only succeed where all the

10

other elements of a contract exist, but consideration is lacking." *Dumas* v. *Infinity Broadcasting Corp.*, 416 F.3d 671, 677 (7th Cir. 2005) (citation omitted). "Promissory estoppel is not a doctrine designed to give a party . . . a second bite at the apple in the event that it fails to prove a breach of contract." *Id.* (citations omitted).

It is unclear what promise Westport believes supports promissory estoppel, but the record supports none. At some points, Westport appears to argue that Friedenberg's referral was the unambiguous promise that Friedenberg then justifiably relied on. (Dkt. 53 at 10 ("[H]is request was unambiguously a request to issue . . . .").) Westport cannot succeed against Travelers if it claims that Friedenberg relied on his own promise. At best, Westport's theory is that Bloor's approval seemed so much like an acceptance of Friedenberg's request to issue coverage based on the draft proposal that it should be treated as one as a matter of equity. That is a second bite at the contract claim, and no reasonable jury could rule in Westport's favor on that theory of promissory estoppel. *See, e.g.*, *Bercoon, Weiner, Glick & Brook* v. *Manufacturers Hanover Tr. Co.*, 818 F. Supp. 1152, 1160 (N.D. Ill. 1993) (dismissing promissory estoppel claim at pleading stage where alleged promise was saying "done deal" in response to offer); *see also All-Tech Telecom, Inc.* v. *Amway Corp.*, 174 F.3d 862, 869 (7th Cir. 1999) ("When there is an express contract governing the relationship out of which the promise emerged, and no issue of consideration, there is no gap in the remedial system for promissory estoppel to fill.").

Summary judgment is granted as to Count II of the fourth amended complaint.

## III. Reformation

Westport does not defend its reformation count in its response to Travelers's motion for summary judgment, and on this record, Travelers is entitled to summary judgment. Reformation entails correcting a written contract that does not match the parties' true agreement because of a

mutual mistake. *Indiana Ins. Co.* v. *Pana Cmty. Unit Sch. Dist. No. 8*, 314 F.3d 895, 904 (7th Cir. 2002) (citing *Alliance Syndicate* v. *Parsec, Inc.*, 741 N.E.2d 1039, 1048 (Ill. App. 2000)). But Westport acknowledges that Bloor and Friedenberg did not execute a written contract memorializing any agreement they reached and instead seeks to use reformation to reduce their agreement to writing. (*See, e.g.*, dkt. 35-1 ¶ 44 ("The failure . . . to have the interim policy finalized, printed, and delivered to the insured, was a mutual mistake of fact.").) That is not the proper subject of reformation.

Because there is no instrument to be reformed, summary judgment is granted as to Count III of the fourth amended complaint.

## CONCLUSION AND ORDER

For the reasons above, defendants' motion for summary judgment (dkt. 46) is granted as to Counts II and III of the fourth amended complaint and denied as to Count I.

Date: February 1, 2019

_____
U.S. District Judge Joan H. Lefkow